Our next case is Avera v. HHS. For the record, I am Robert Moxley of Robert T. Moxley, P.C., Cheyenne, Wyoming. This appeal is brought to correct an egregious misinterpretation of 42 U.S. Code 300-AA-15, subsection E, and the term, reasonable attorney's fees. The egregious misinterpretation of the term reasonable attorney's fees was low. Where did you do your work, Mr. Moxley? I'm sorry? Where did you do your work on this case? Probably in your office in Cheyenne. My office is in Cheyenne, Wyoming. And why then would you expect to have... You're paying the rates on offices of a Cheyenne attorney. You're hiring people from the Cheyenne labor pool, so your expenses would be tied to Cheyenne rates. Why would you expect to have higher rates that might be found in Washington, D.C., for instance? Because the uniform interpretation of the term reasonable attorney's fees in every federal court in the United States means four on the rates. Well, except for the Davis case. I'm sorry? There's the Davis case in the D.C. Circuit, which says that where all the work was done elsewhere and where there was no hearing in the forum, we're going to leave room to apply the out-of-forum rates, right? The Davis case, Your Honor, the Davis case in the D.C. Circuit is eight years old and it's never been followed. Moreover, it would be very strange for the Davis case... But you'd lose under the Davis case, right? I'm sorry? You'd lose here on this issue under the Davis case, right? I would indeed. Yeah. But it's inappropriate to apply the Davis case because the Davis case self-consciously and explicitly states that we are carving out a very small exception to what is the rule, which is the forum rule. The problem here, Your Honor, is that... So what's wrong with the carve-out that Davis adopted? Why is the carve-out that Davis adopted impermissible? It's impermissible in the vaccine program because it deprives vaccine-injured children of the effective assistance of counsel. This dovetails with a problem in the statute that is really a constitutional dimension in this matter because the statute prohibits a contract between the petitioner and counsel for reasonable compensation of counsel. Now, in the Davis case, the carving out of this very narrow exception was explicitly stated, we're not going to give a windfall to this petitioner who is getting more money in the attorney's fees award than what he agreed to pay the attorney. But the Davis case has never been followed, and the Davis case acknowledges that the baseline standard is the forum rule. What do you mean when you say it's never been followed? I can't find any federal case anywhere that accepts that rule, and all of the cases... That doesn't mean there haven't been hundreds and hundreds of cases like yours, right? There aren't any cases anywhere that use the locality. I mean, hundreds and hundreds of cases where the party said the law is Davis, and so if all of my work was performed, I mean, would you feel comfortable going to the D.C. Circuit and bringing the Davis case back on exactly the same facts as Davis and saying I'm entitled to the forum rate? You wouldn't. I would, yes. I would indeed. Has the D.C. Circuit distinguished Davis? Other federal courts have. Other federal courts have rejected Davis basically. What other circuits have rejected Davis? What's that? What other circuits have rejected Davis? I believe the Fifth Circuit has rejected Davis. It's in my brief, Your Honor. What case is that? There's a case that rejects Davis simply because Davis rejects the forum rule. Which case is that? Well, you can give it to me in the reply. I will find it. Once again, Mr. Moxley, if all of your expenses are tied to Cheyenne, why would you feel that you need the higher rates? Because I've had to borrow a million dollars to compete with the government in these cases. But your expenses are tied to Cheyenne. Is there some reason that you should get the same rate as someone who has the higher expenses in a different locale? No. I beg to differ, Your Honor. My expenses are tied to practicing the vaccine program. My expenses are tied to finding experts wherever I can find experts all over the country. My expenses are tied generally to traveling to Washington. But my expenses are tied also to the crushing financial burden of years and years and years of delay. Well, that's an argument for an interim fee award. I don't see why it's an argument for applying the forum rate. Well, the argument for applying forum rates, Your Honor, is the argument that that is what relevant community means under all federal cases that define the term. You're going to set the District of Columbia up as the correct forum, right? Yes. So whatever the lodestar rates are, whatever the folks over at Covington and Burling and Arlen Porter, they're charging, that's where you ought to see your rate gravitate, right? Yes. Now, assume we did that. How are our friends up in New York City going to feel about that? Because their hourly rates are higher than the boys down here in Washington. Well, the appropriate— What are they going to say? There's an answer to that, and there's an answer in the federal case law, Your Honor. The appropriate adjustment for higher rates and for lower-cost places is the percentage difference between what the U.S. government pays attorneys in Washington, D.C., as opposed to the Mount West, or as opposed to New York. I cited several cases from California where, in fact, laughing matrix rates, which were a reflection of Washington, D.C., forum rates, but also a reflection of what it costs to do complex federal litigation, those rates were adjusted upwards in California because the adjustment that is made to paying federal attorneys in Washington, the locality pay scale, I think is what it's called, those were adjusted upwards for the benefit of California attorneys, recognizing that the laughing matrix is— The burden would be on those lawyers to come in and argue that they're entitled to more. But anybody practicing law in a jurisdiction where the rates are lower than Washington, D.C., gets automatic D.C. rates. That is correct. The Supreme Court's jurisprudence on attorney's fees teaches us that attorney's fees are not based on what the attorney's fees cost, what the attorney's services cost, but on what the attorney's services are worth. And I submit, Your Honor, that my services in front of the Court of Federal Claims here in this town representing vaccine-injured children are worth as much as the services of a civil lawyer— What would happen if you had two billing rates out there in Cheyenne? One is for folks from Cheyenne that come in and want you to write a contract for them or deal with a car wreck or something like that. And then you've got another rate for people that want to come in the vaccine system. And that's a higher up rate. That might even be the D.C. or the rate that you'd get here in D.C. If I could negotiate a rate, that's what I would do. It's not a matter of negotiating. Just saying them is the rates. I'm sorry? It's not a matter of negotiating, is it? How do you now say what the rate is to your client, your vaccine client? I can't tell them anything because the statute prohibits me from charging my clients. So you don't have any published rates? I'm sorry? You don't have any published rates for vaccine services? No, because the statute requires me to rely on the court to pay me. Mr. Moxley, you have on page 38 of your brief the statement, no federal court has followed Davis, and then you have a footnote. The footnote, however, is to a district court case, and the district court case isn't even in the Fifth Circuit. It's in the Ninth. So there isn't a circuit court that you apparently cite to that has differed with the Davis rule, right? No, nobody has ever tried to use the Davis rule against anybody except for the government in vaccine cases because the government has a huge advantage in these cases by keeping the attorneys' fees artificially low and by making it difficult for petitioners' attorneys to compete economically. I am bringing this appeal for the benefit of these children and only incidentally for the benefit of these few attorneys that survive in this program. If there had been a hearing in this case before the special master, that hearing would have been in Wyoming, wouldn't it? No. No? It would have been haphazard. It could have been in Wyoming. It wouldn't very likely have been in Wyoming. Isn't it at the request of the petitioner, typically in practice? We come to a consensus where we have the hearing. We have most of our expert hearings where the expert is because we know that the expert is waiting for his money. We know that the expert is indulging this program to testify at all for a petitioner because the expert knows that he may wait 5 or 10 or 15 years to get paid. For instance, the government in its brief threw around the notion of why I'm asking for 200 percent more than I charge my clients in Cheyenne who can pay me by retainer. The government also talked about the congressional expectations that these cases would be easy and straightforward and that attorney's fees wouldn't be very high. But my Pafford case decided a year ago in October, took 5 years, and that was just the entitlement matter. Kevin Conway's Zatucheny case, which was submitted to the court in September, was filed January 31, 1994. Now, if you contrast that with the congressional expectation that these cases would take 240 days... I keep coming back to this argument for the award of interim fees. I don't see why it's an argument for applying the forum rate for the fees that are awarded. The evidence in this case illustrates both points that I'm trying to make here. The point is that local rates, rates that don't approach adjusted Laffey Matrix fees, are inadequate to attract counsel to the practice. Now, that is one of the standards from the Supreme Court jurisprudence. That is to say, reasonable attorney's fees are those which are adequate to attract competent counsel to the practice. Would you like to say something to rebuttal, Mr. Moxley? I would like to do that, yes. Thank you. Thank you. Mr. Battaglia? Thank you, and may it please the Court. As the Court of Federal Claims explained, and as the Court has already noted, Petitioner's Counsel did all the work in this case in Cheyenne, Wyoming, and never stepped foot in Washington, D.C., for any of the work in this matter. And Petitioner's Counsel has twice averred to the special master, in the record at JA-69, and again at 147. Mr. Moxley isn't disagreeing with you. I mean, Mr. Moxley is presenting a policy consideration to the Court, saying that when we interpret the word reasonable for reasonable legal fees, he thinks this Court has the latitude and the leeway to decide that an hourly rate, in this case that's pegged to Cheyenne, Wyoming, is not reasonable. His argument is that he thinks that Congress wanted to be able to attract attorneys to take these cases, that he thinks this Court can take judicial notice of the fact that the table injury cases, which were supposedly easy, are a thing of the past. They're all causation-of-fact cases now, and they're very costly. And he said, those are the reasons why we should adopt a forum rule that does not have a Davis exception. It's a policy argument. That's right, Your Honor. And is the government in favor of having bad lawyers who pay little attention to these cases take them on? Is that the government's desire? No, Your Honor, I don't think that's the government's desire. I think the desire here is to keep fees in accord with Congress's intent, which, as we set forth and as this Court said, in cases such as Saxton, Beck, and Phillips, fees Congress expected would be low because these are supposed to be streamlined procedures with none of the traditional burdensome discovery. Trials don't take place. Fees would be low because the cases would be easy and they'd be over soon. Remember the table cases? Were you around when there were table cases, back when the department had tables or worked? I know of the table cases, Your Honor. Except for the legal fights which went on in this Court as to what did the table mean and how did it work, the table cases were designed to be slam-dunk. If you went in and said, I got the vaccine, these were the indications within the right number of days afterwards, this is what you got, then the burden shifted to the government to prove, as a matter of fact, something other than the vaccine caused it. So when the Congress was talking about, you know, not very high fees and that sort of thing, they were thinking about this speed line, rocket docket, quick to judgment litigation. And now what's happening is with the causation impact cases, they're just tort cases, take forever. Well, Your Honor, I would paraphrase what this Court said in Beck. These are the sort of policy arguments, as Your Honor just described them, for Congress to... Yeah, but wait, wait, wait. Congress hasn't addressed this question. Congress hasn't indicated that they wanted people compensated below market rates, right? No. Congress hasn't said one way or the other, but I think as to getting back to the reasonable fee constraints... Are you arguing for the Davis rule? Is that what you think the appropriate rule is? No, I think ultimately the hometown rule is appropriate. What's the hometown rule? The hometown rule is that the fee that should presumptively be awarded would be the fee that counsel ordinarily derives from the prevailing market that they're from. So you're arguing for a more stringent rule in Davis? I'm arguing for the rule that the general rule is you get your hometown rate, not your dam succession. But you didn't answer my question. My question is are you arguing for a more stringent rule in Davis? Well, I think the answer is yes, but the qualification on that, at least in this case, is that whether you apply Davis here or the hometown rule here, you get to the same result. What court has adopted the hometown rule? Well, no court that I'm aware of has adopted the hometown rule, but I should emphasize that as Davis itself explained, the D.C. Circuit found, and I didn't find any cases, where rates were being awarded the forum rule when you had a situation like you have here. Davis itself emphasized that, where you have somebody who's performed the bulk of the work in their home jurisdiction. Well, that's the Davis rule, but I thought you were just saying you wanted a more stringent rule in Davis. You wanted what you called a hometown rule, which apparently has not been adopted by any court. Well, it's not been adopted by any court because of the important differences between the vaccine program on the one hand and federal fee-shifting litigation in D.C. federal court or other federal courts on the other. Wait a second. What's the difference? You're suggesting that under the vaccine program, Congress wanted lower fees to be awarded than under other fee-shifting litigation statutes? No, I'm suggesting that the vaccine program is very different from the type of complex D.C. federal court litigation to which the D.C. Laking matrix applies. That's an important difference, as we try to put forth in our brief, that you have here, as Congress at least intended, that these would be simplified matters where the differences between discovery, the evidentiary standards, and everything are relaxed. That's an argument against using the Laking matrix because that's for more complex litigation. What you're suggesting is the vaccine litigation should have its own matrix, but the matrix in most cases then would be a vaccine act matrix based on the forum unless there were a Davis exception applied. No? I'm arguing, Your Honor, that there wouldn't be any vaccine matrix per se. There would be a simple application of what the hometown rates are. But that's never been adopted by any court. It's never been adopted. But again, the litigations that courts face are different. And I should emphasize as well, as explained in Davis, that the reason for having a forum rule was because courts expected when they were adopting the rule that the local courts would be able to develop expertise with the local bar and therefore be more efficient for that local court to simply apply the local rates. You don't have that with the vaccine program because, after all, you do have attorneys from all over the country. There's no familiarity with what their particular market is because their markets are in Boston or New York, San Francisco, Wyoming, and what have you. So the reason for having a forum rule in those other courts is different from having a forum rule in the vaccine program. And so... The difference being? The difference being that there is no local market that would make it more efficient for the special master to apply that particular market's rates to a case. They have to deal with different markets by definition because they have attorneys all over the country. It's not any more efficient for the special masters in the program to just apply the hometown rule, looking, for example, at Mr. Moxley's sworn-upon billing rate than it would be for them to develop what a market rate would be. The market is all over the country. It's in different parts of the country. Mr. Battaglia, are you aware of any petitioners lacking for counsel? Mr. Moxley suggests that the current fee arrangements are depriving worthy petitioners of adequate counsel. Is there any record evidence to support that? No, Your Honor, there's not. And I should note, too, that the Court of Federal Claims does have a list of attorneys who are willing to take vaccine cases, and that list is not at all complete. There are hundreds of attorneys who handle vaccine cases. So there is none of the problem of getting counsel to represent these kind of vaccine petitioners, nor would you expect there to be when, after all, a Boston attorney would be able to get their Boston rate, a New York attorney would be able to get their New York rate. Can I ask you a question about Mr. Moxley's request for an interim fee awards, which was declined by the special master in the Court of Federal Claims? I'd like to raise it because it wasn't raised earlier, and Mr. Moxley might want to refer to it in rebuttal, and if we don't talk about it, he can't rebut. What is it in the statute that prohibits, prohibits, the grant of interim legal fees and or expenses? Well, I think— Can you point to the language in the statute that says reasonable counsel fees shall never be paid on interim basis? I'm looking for the language that supports your argument and the view of the Court of Federal Claims that there is a statutory prohibition. Yes, Your Honor. It does say in section 300 AA-15F, I believe, that no compensation—I'm paraphrasing— no compensation shall be paid until an election has been made whether to accept or reject the judgment. We held in the Sanders case that the word compensation there doesn't include legal fees. This Court held this much in the sense that it was addressing the issue about whether an attorney is deprived from getting any fees at all if they elect to reject a judgment of no recovery. That's a different issue here. But it's the same language you're relying on. We said the word compensation there didn't mean attorney's fees, and you're arguing that it does. That's the whole basis for your statutory argument. Well, I would add, Your Honor, that counsel himself says that the statute is silent about authority to award attorney's fees, and so he says that by implication that he should be entitled to it. So your answer to Judge Clevenger is the statute doesn't prohibit it, but it's silent as to allowing it. No, I think it's silent. And when you do read the statute, it says no compensation shall be paid until there's been an election. No, just assume for purposes of argument that that latter arrow in your quiver was taken away in Saunders. Assume for purposes of argument that the court were to say compensation and attorney's fees are not the same thing anywhere in the statute. Attorney's fees are attorney's fees, compensation is compensation. Saunders held that bang, next case. Assume that's so, and assume that there's nothing in the statute that says you're prohibited from paying interim fees. Why on earth would a court state in a precedential opinion that there is such a prohibition? Well, you're asking me to put aside the silence argument and the no compensation argument. Well, say they're silent, so questions come up all the time. They're silenced. I mean, this is not a case where Health and Human Services has, by notice in prominent rulemaking, published some rule that says there can't be interim payments as a matter of interpreting a gap or a silence. There's no Chevron issue here. This may be just clean. And so what arguments would you mount to tell me that we should not assume that we have the authority to write an opinion saying you could have interim fee payments if you wanted to? We can answer the silence question, right? What arguments do you make that tell me I should write an opinion saying no interim fees? Well, with all those caveats, Your Honor, I would say Congress's intent, again, important to statutory construction, is that these would be expedited quick decisions. And to have an interim application for fees in the middle of what's supposed to be an expedited case would slow down the case. You would have a long, fought out, presumably, litigation over interim fees before there's any judgment at all. Well, but the award of fees that I'm suggesting the court has the authority, might have the authority to order if they wanted to, isn't automatic. If Mr. Moxley comes in after having expended two hours on the case, right, and says, pay me for the two hours I've done, I would think that the Court of Federal Claims, in the end, would be entitled to affirm when a special master said, no, that's not what we mean by interim fees. Well, sure. If you want to come in on a case that's going along really quickly and you want to be paid on a weekly basis, no. But if Mr. Moxley might come in and say this case is five years old or I have an expert that has to be paid and I can show that if this expert doesn't be paid he won't testify, then he can make an argument in an individual case that suggests interim fees would be appropriate. Maybe he'd get them then. Sure, Your Honor. There could be any reasons if that were the rule, including in this case where any delays in this matter would be attributable to Mr. Moxley or his client and not getting the requested evidence again and again. But the point is that as to the law, we have a statute that doesn't expressly authorize it, and you're dealing here with an Article I Court of Federal Claims and a special master that must derive their authority expressly from the statute. Wait, wait, wait. Under these other fee-shifting statutes, in Bradley and other cases, the Supreme Court has sanctioned interim fee awards even where the award can only be made to a prevailing party, which is not a limitation that exists here. How do you distinguish those cases? For the reason you just touched on, Your Honor, in those cases there is a determination of liability. There was a partial judgment in those cases where... But they said there's no statutory authority in those statutes for an interim fee award, and yet the Supreme Court construed those statutes as allowing an interim fee award. Why is this different? Well, I think one of the reasons it's different is because you are dealing with the Court of Federal Claims and a special master here who must derive their authority from express statutory language, and that's not here. There's no express statutory language authorizing it. Is there any other difference between those cases and this one? That there is no prevailing party here. There was no judgment. But doesn't that make it easier to make an interim award because the fees are going to be awarded whether or not they're a prevailing party? Well, there still has to be a judgment, though. I think there has to be a partial judgment or a judgment on liability, or whether it's granted or denied, there still has to be a judgment. So without any kind of judgment... How does that distinguish the Supreme Court cases I'm talking about? I'm sorry, Your Honor, the Supreme Court cases determined that there was a determination, a judgment of liability, even though there was no final judgment in place. The conditions for a fee award existed, so an interim fee award was possible. Why isn't that rule also appropriate here? The conditions for a fee award are appropriate. That is, substantial fees have been accumulated and there's an entitlement to them, win or lose. Why shouldn't there be an interim award? Because the statutory language says that there can't be any award one way or the other until there's a judgment and an election on that judgment. Well, you're coming back to the argument that seems to have been rejected in Sanders. Well, the court in Sanders, or Saunders, decided that, if I may answer, that part of the reasoning in Saunders was that the statute also expressly said that an attorney shall be entitled to fees if they brought the case in good faith and had a reasonable basis for doing so. So there was a textual hook in Saunders. There's no such textual hook here. In Saunders, moreover, there was no discussion about the judgment requirement that I'm referring to, Your Honor. So for these reasons, I don't think... What happens if a petitioner brings a case under the vaccine program and a couple months later withdraws and says, I'm out, I'm sorry, I didn't want to do it? They can still get fees, can't they? I don't know the answer necessarily. So long as there's a finding that it was brought in good faith, the attorney had a reason to believe, and then all of a sudden, let's say, a case comes down that makes perfectly clear that you can't win, and so they say, fine, we're out of here, we don't want a judgment, we're not going to bother you any further. Well, I would suppose still in that circumstance there still would be some sort of judgment that would have to be entered dismissing the case. And that is, after all, what the statutory language requires in 300A. Has there been such a judgment in this case? There was a judgment... There was a judgment of... Yes, Your Honor. Yeah. Thank you, Mr. Battaglia. Thank you, Your Honor. Could you add two minutes to Mr. Moxley's time? Because we went over two with Mr. Battaglia. And you have about three and a half minutes left, Mr. Moxley. Thank you, Your Honor. The first thing I would point out is that there are people looking for counsel. There are experienced program counsel maintaining websites that announce on the websites that say, if you have a vaccine case, don't call us. If you look at Kevin Conway's site, Conway, Conway, Homer, Jim Kaplan in Boston, it says, if you have an autism case, we won't take it. And I did an informal poll of the few brethren that I have remaining in this business before coming here about whether or not they turn away cases, and everybody turns away cases, and the economics of this practice are the reason. Now, I understand that I stayed in Cheyenne for this case, but I've tried vaccine cases in Juneau, Alaska. I've tried vaccine cases in Houston, Texas. I've tried vaccine cases everywhere. The thing is that this assumption that there are... Did you ask for the rates in Juneau when you were in Juneau? I'm sorry? Did you ask for the Juneau rates when you were in Juneau? No. In fact, nobody has ever asked for forum rates before this laughing matrix litigation got started a couple of years ago when we realized that we had to do something to save the petitioner's bar and to save the practice in this program. I'm the only guy to ever get to this court with the argument that the forum rate is the controlling rate, and it's simply because of the oppressive economics of the program. Nobody could afford to take a case up to this court, and I have spent five times as much time litigating this case as I did litigating for the Averitt. The government doesn't know why I allowed the Averitt case to die, but I allowed it to die because I found something in it that was fatal to the case, and it was my experience and my acumen about vaccine law that allowed me to do that, and it was a saving to the government. The position is absolutely incorrect that the different nature of the vaccine program is an excuse for paying different rates, because the Lodestar principle is that it's the number of hours times the reasonable rate is what makes a reasonable fee, and if a case is complicated, it takes more hours, and the Court of Federal Claims recognized that in the Rupert litigation, which took four years, that was four years of attorney's fees litigation that really came down to a nullity, a judgment that this is really only about this law firm, and it's really only about this town, and the reason is that the forum rate doctrine has never been raised in this program, and never been before this Article III Court of Law to say that this is what the law is. Mr. Moxley, if interim fee awards under the statute were permissible, into the same kind of discretion that's vested, I guess, with the special master in the Court of Federal Claims on fees generally, give me a couple of examples of instances in which you think interim fees or an application would be made and you think it should be granted. Well, interim fees are always appropriate at the end of the entitlement phase. In order to save money and unfortunately also to delay the cases that the officers... When you say at the end of the entitlement phase, you mean in front of the special master? Yes, these cases are bifurcated. We're not... When Congress passed the statute, they suggested that we front-load these cases completely, and that, I mean, I think they used the term special master as... Can you bring your answer to a close here, Mr. Moxley? I'm sorry? Your time's expired. Could you give us your final thoughts on this interim fee question? Okay, yes. The cases are bifurcated. When entitlement is over, there is still several years of damages litigation potentially in front of you, and it's time to hire new experts and to do what are called life care plans. It's time to start spending money on the case again. That's when the interim fees are especially appropriate. But as your example stated, when there's experts to be paid, it's not hard to know that the case is brought in good faith at some particular point, and it's not hard for a case to have a whole lot of attorney's labor and expenditure in it. Thank you, Mr. Moxley.